IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DAVID GENE DAUGHERTY,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 11-462-GPM-CJP |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

## REPORT and RECOMMENDATION

This Report and Recommendation is respectfully submitted to District Judge G. Patrick Murphy pursuant to **28 U.S.C. § 636(b)(1)(B)**.

In accordance with **42 U.S.C. § 405(g)**, plaintiff David Gene Daugherty seeks judicial review of the final agency decision finding that he is not disabled and denying him Disability Insurance Benefits (DIB) pursuant to **42 U.S.C. § 423**.

## Procedural History

Plaintiff filed an application for DIB in January, 2009, alleging disability beginning on July 26, 2008. After the application was denied initially and on reconsideration, a hearing was held before Administrative Law Judge (ALJ) Jonathan P. Blutcher. ALJ Blutcher denied the application for benefits in a decision dated May 11, 2010. (Tr. 16-18). The Appeals Council denied review, and the May 11, 2010, decision became the final agency decision. (Tr. 1).

Plaintiff has exhausted his administrative remedies and has filed a timely complaint.

## Issues Raised by Plaintiff

Plaintiff raises two issues:

(1) The ALJ failed to account for all of his limitations, including right shoulder impairment and limited range of motion of the lumbar spine.

(2) The ALJ misinterpreted the evidence regarding his back and neck pain.

## Applicable Legal Standards

In order to receive DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, a person is disabled when he or she has the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3).** Pursuant to 404 C.F.R. 404.335(c), the definition of disabled for purposed of DWB is the same as the definition for purposes of DIB.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. It must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. **See,** *Schroeter v. Sullivan*, **977 F.2d 391, 393 (7th Cir. 1992);** *Pope v. Shalala*, **998 F.2d 473, 477 (7th Cir. 1993); 20 C.F.R. § 404.1520(b-f).**

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Secretary at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, **737 F.2d 714, 715 (7th Cir. 1984).** The Commissioner's

burden at step five is to show that there are a significant number of jobs in the economy that claimant is capable of performing. **See,** ***Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287, 2294 (1987);** ***Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).**

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. The scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**. Thus, this Court must determine not whether Mr. Daugherty was, in fact, disabled, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. **See,** ***Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996)** (citing ***Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)**). This Court uses the Supreme Court's definition of substantial evidence, i.e, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Richard v. Perales*, 402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. ***Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997)**. However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, ***Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

## The Decision of the ALJ

ALJ Blucher followed the five-step analytical framework described above. He determined that Mr. Daugherty is insured for DIB through September 30, 2012. He found that plaintiff had not been engaged in substantial gainful activity since the alleged onset date. He found that plaintiff had severe impairments of low back pain, status post fusion surgery; cervical

pain, status post fusion surgery; diabetes; hypertension; sleep apnea; obesity; and major depressive disorder, and that his condition does not meet or equal a listed impairment.

The ALJ concluded that Mr. Daugherty had the RFC to perform a limited range of work at the light exertional level. The ALJ concluded that Mr. Daugherty was able to do his past work as a car parts salesman as that job is generally performed. The ALJ also made an alternative finding that plaintiff is able to do several jobs at the sedentary and light level (sales clerk, assembler, cashier, hand packer) and that these jobs exist in significant numbers in the regional economy. The ALJ therefore determined that Mr. Daugherty was not disabled. (Tr. 16-27).

### The Evidentiary Record

This Court has reviewed and considered the entire record in formulating this Report and Recommendation. The following is a summary of some of the pertinent portions of the written record. As Mr. Daugherty has not contested the findings with regard to his mental impairments, the Court will not review that evidence in any detail.

**1.    Agency Forms**

Mr. Daugherty was born in 1965, and alleged that he became disabled on July 26, 2008. He is insured for DIB through September 30, 2012. (Tr. 120).

In a Disability Report, plaintiff said he stopped working on July 26, 2008, because of back pain. (Tr. 124). He had worked as a mechanic, tire deliveryman, and in a car parts store. (Tr. 125).

**2.    Medical Records**

The medical records begin in May, 2006, and reflect that Mr. Daugherty was treated by Dr. P. Sahni for neck and back pain. He had undergone cervical discectomy with fusion and lumbar laminectomy with fusion in 2003. His neck began hurting again in 2004. He also had low back pain radiating into the right leg. He was working for O'Reilly Auto Parts. (Tr. 429).

Dr. Sahni gave him a series of cervical and lumbar injections from 2006 through 2008. (Tr. 420-427).

The alleged date of disability is July 26, 2008. Plaintiff saw Dr. Sahni on July 29, 2008, complaining of low back pain radiating toward the right groin and down the right leg. He also had neck and right shoulder pain. Dr. Sahni did a lumbar injection, which gave him "good relief of pain." (Tr. 420).

On August 1, 2008, a lumbar MRI showed multilevel diskogenic and degenerative joint disease with foraminal narrowing and exiting nerve root displacement, but no definite nerve root impingement. (Tr. 310).

Dr. Paul Tolentino, a neurosurgeon, evaluated plaintiff for his complaints of radiating back pain on August 28, 2008. Plaintiff told Dr. Tolentino that his low back pain was exacerbated 12 months earlier when he had been working on a 12-foot utility trailer. Dr. Tolentino ordered further diagnostic studies. (Tr. 242-247). In October, 2008, Dr. Tolentino saw plaintiff and reviewed an MRI of the thoracic spine which had been done the previous month. The MRI showed small central disc protrusions without stenosis or nerve compression. Dr. Tolentino diagnosed right sacroiliac joint dysfunction and did not recommend neurosurgical intervention. Rather, he referred plaintiff for right SI joint injection and chiropractic treatment. (Tr. 236-237). Another doctor in the same office gave him an injection into his right sacroiliac joint in October, 2008. (Tr. 248). In November, 2008, Dr. Tolentino's PA noted that the injection resolved most of his pain for a week. Plaintiff told the PA that the back pain caused by the incident with the 12-foot trailer had resolved. (Tr. 251). His cervical range of motion was full, and he had mild limitation of the range of motion of the lumbar spine. Straight leg raising test was negative. The diagnosis was right SI joint dysfunction. As there was no surgical treatment needed, he was referred to a pain management center closer to his home. (Tr. 251-

255).

In November, 2008, plaintiff was admitted to CenterPointe Hospital for four days. He had been using cocaine for the past few weeks, and was having suicidal thoughts. (Tr. 203-204). Cardiac catheterization was done in December, 2008, with largely normal results. The recommendation was to continue aggressive medical therapy to control his blood pressure. (Tr. 493-495).

Mr. Daugherty began seeing Dr. Malla at the Pain Management Center of Marion in April, 2009, for complaints of neck and low back pain, along with right shoulder pain and headaches. He indicated that he was able to walk, sit, stand, climb stairs, dress himself and drive unassisted. He was taking Norco and Restoril, which he said gave him "significant relief" with no side effects. The doctor continued his Norco. (Tr. 657-670). Dr. Malla gave plaintiff injections in his neck and back in September and December, 2009, and March, 2010, which gave him some pain relief. (Tr. 693-696).

Plaintiff's primary care physician was Dr. Anantachai Promote. Plaintiff called his office on February 26, 2009, and said that he had been lifting weights with his son and his right arm was swollen from the shoulder to the elbow. He was instructed to go to the emergency room. (Tr. 635). On March 16, 2009, Dr. Promote noted that he had pain and limited range of motion in the right shoulder. He diagnosed entrapment syndrome and prescribed medication. (Tr. 634).

In March, 2009, an MRI of the right shoulder showed degenerative arthrosis/osteoarthrosis and a possible tiny partial thickness rotator cuff tear. (Tr. 649-650).

Dr. J.T. Davis of Southern Orthopedic Associates treated plaintiff for his right shoulder, beginning on April 15, 2009. Plaintiff gave a history of intermittent shoulder pain since an automobile accident in 1996. Dr. Davis reviewed his prior MRI film and took x-rays. On physical examination, he had limited range of motion of the shoulder, but full range of motion of

the neck. He had some AC joint tenderness to palpation. The assessment was right shoulder subacromial outlet impingement, rotator cuff tendonesis versus small partial tear, and AC joint arthrosis. Dr. Davis felt he had "a mixed clinical picture" with pain coming from the neck and the right shoulder. He gave plaintiff a corticosteroid injection in the right shoulder, and noted that he wanted to avoid surgery. (Tr. 603). On June 9, 2009, plaintiff reported that he had "great relief" for 3 or 4 weeks, but the pain was creeping back to where it was before the shot. Dr. Davis prescribed physical therapy and Naproxen. (Tr. 605). On July 20, 2009, Dr. Davis noted that he had improvement in his shoulder pain, but he still had some discomfort over the AC joint. He was to continue with protective body mechanics and home exercises, and return as needed. (Tr. 606). There are no further records from Dr. Davis.

Dr. Promote treated plaintiff's hypertension and diabetes. (Tr. 630-632). On February 23, 2010, Dr. Promote noted that plaintiff told him he had continued neck pain and headaches. He was seeing the Pain Clinic. He said he could sit for 45 minutes and could walk 1/3 of a mile at a time. On exam, the range of motion of his neck and back were limited, but his shoulder movement was normal. The impression was cervical and lumbar spondylosis, depression and hypertension. Dr. Promote noted that he got his pain medication from the Pain Clinic, and recommended that he continue treatment. (Tr. 690).

Dr. Promote completed a report on April 14, 2010, in which he indicated that Mr. Daugherty had very limited functional capacity. For example, he said that Mr. Daugherty could not lift any weight and could stand, walk and sit for only one hour each a day. (Tr. 697-702).

**3.   Medical Records after the ALJ Decision**

The transcript contains medical records which post-date the ALJ's decision. See, Tr. 703-742. This evidence was submitted to the Appeals Council, which denied review. This evidence cannot be considered by this Court in determining whether the ALJ's decision was

supported by substantial evidence. *Getch v. Astrue,* 539 F.3d 473, 484 (7th Cir. 2008); *Rice v. Barnhart*, 384 F.3d 363, 366, n. 2 (7th Cir. 2004).

**4.    Consultative Examination and RFC Assessment**

Dr. Adrian Feinerman performed a physical examination on April 13, 2009. (Tr. 538-546). Mr. Daugherty complained of neck and back pain since 1996. He also complained of pain in his right shoulder and said that he had been diagnosed with a rotator cuff tear. He said that he could walk for ½ mile, stand for 30 minutes, sit for 45 minutes, and perform fine and gross manipulations normally. He said that squatting or bending hurt his back. (Tr. 539). On physical examination, he was 6'2" tall and weighted 258 pounds. His heart rate was regular with no murmurs, gallops or rubs. His lungs were clear with no wheezes, rales or rhonchi. There was no anatomic abnormality of any extremity. There was no redness, warmth, thickening or effusion of any joint. He had a decreased range of motion of the right upper extremity. Grip strength was strong and equal bilaterally. (Tr. 540-541). Mr. Daugherty had no anatomic deformity of his cervical, thoracic or lumbar spine. He had decreased range of motion of the cervical and lumbar spine. He could walk 50 feet and ambulation was normal. He could get on and off the examining table. He had no pain in the weight bearing joints. He had no muscle spasm or atrophy. Muscle strength was normal. Fine and gross manipulation were normal. Straight leg raising was positive on the right. He was able to tandem walk, walk on heels and toes, hop, squat and rise from a chair without difficulty. (Tr. 541-542). Dr. Feinerman concluded that plaintiff was able to sit, stand and walk normally, and that he could lift, carry and handle objects without difficulty. (Tr. 543).

State agency physician Dr. Julio Pardo completed a physical residual functional capacity assessment on October 6, 2009. (Tr. 674-681). He concluded that plaintiff was capable of performing light work with limitations. He opined that plaintiff was limited in reaching in all

-8-

directions, including overhead. He found that plaintiff was not limited with respect to postural activities (stooping, kneeling, crouching and crawling), but he could never climb ladders, ramps or scaffolds.

**5.** **Evidentiary Hearing**

Plaintiff was represented by an attorney at the hearing on April 16, 2010. He was 45 years old. (Tr. 35). He had an Associates Degree in automotive technology. He was 6'2" and weighed 246 pounds. He lived with his wife and children. His children were 14 and 11 years old. (Tr. 37). His wife worked as an ultrasound technician at Herrin Hospital. (Tr. 38).

Mr. Daugherty admitted that he used some illegal drugs in 2008. He testified that his hospitalization that year was for depression, and was not for substance abuse. (Tr. 39).

His last job was in an auto parts store. He was the manager for a period of time. (Tr. 40). Before that, he drove a truck for a tire company, delivering tires to independent dealers. He had to unload the truck when he made a delivery. (Tr. 41). Before that, he was a mechanic, from 1987 through 2001. (Tr. 42).

Mr. Daugherty testified that he was unable to work because of pain in his neck and back. (Tr. 42-43, 46-47). He said that he does some daily activities, such as driving his kids to school and sports, some housework and some cooking. He reads, watches television and helps with homework. (Tr. 38, 44-46). Once or twice a week, he stays in bed all day because of pain and depression. (Tr. 49).

Plaintiff was getting shots in his neck and back for pain every 3 months, and was taking Norco for pain. He said that this treatment made the pain bearable, but it was still there and increased if he tried to do anything. (Tr. 49).

A vocational expert (VE) testified. The ALJ asked the VE to assume a person of Mr. Daugherty's age who could lift 20 pounds occasionally, 10 pounds frequently, stand/walk six out

of eight hours, no heights, no hazards, no ropes, no ladders, no scaffolds, and only occasional overhead reaching with both arms. Further, he could not be required to see small objects at a distance, and no complex work. Also, he had 20 percent loss of the range of motion of the neck to the left and right. (Tr. 57). The VE testified that he would be able to do plaintiff's past work as a car parts salesman. He could also do other sales clerk jobs in the light exertional category. (Tr. 58). In addition, he was capable of doing other unskilled jobs at the light and sedentary levels. (Tr. 59-60).

If the person were also limited to no more than one hour on his feet in a day, he could still do some sedentary jobs. (Tr. 61).

## Analysis

Plaintiff argues that the ALJ failed to consider all of his impairments. He complains that the ALJ did not find his shoulder problem to be a severe impairment. However, the failure to identify the shoulder problem as a severe impairment "is of no consequence to the outcome of the case" where the ALJ finds other impairments to be severe and therefore proceeds with the five-step evaluation process. ***Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010).**

To the extent that plaintiff is suggesting that the ALJ ignored his shoulder problems, he is incorrect. The ALJ specifically acknowledged in two separate places that he had limited range of motion in his right shoulder. See, Tr. 22, 23. Plaintiff takes issue with the fact that the ALJ said that he was restricting plaintiff to only occasional overhead reaching due to radiating pain in his arms, and not specifically due to his right shoulder impairment. See, Tr. 23. The ALJ adopted Dr. Pardo's opinion as to physical RFC. Dr. Pardo explained that the limitation on reaching was due to history of cervical fusion, and decreased range of motion of the cervical spine, lumbar spine *and* right shoulder. (Tr. 677). Thus, consideration of the right shoulder limitation was factored into the ALJ's analysis. See, ***Skarbek v. Barnhart*, 390 F.3d 500, 504**

**(7th Cir. 2004).** The ALJ also noted that Mr. Daugherty reported relief of his shoulder pain following corticosteroid injections, citing to Dr. Davis' records, which the ALJ referred to as Ex. 16F. (Tr. 23). Plaintiff argues that he did not have complete pain relief, and he "continues to use protective body mechanics, exercise at home and medicines to ease the shoulder pain." See, Doc. 14, p. 5. First, plaintiff cites to no evidence in the record to show that he continued to use these measures to relieve shoulder pain. As far as the record shows, plaintiff last sought treatment for his shoulder from Dr. Davis on July 20, 2009. He was told to return if he had further problems, but he evidently did not do so. (Tr. 606). At the last visit with Dr. Promote, he had a full range of motion of the shoulder. (Tr. 690). Secondly, as the ALJ noted, Mr. Daugherty testified that he was unable to work due to pain in his neck and back. See, Tr. 25. Mr. Dougherty points to no evidence in the record to suggest that his shoulder impairment limits him in any way that was not accounted for by the ALJ's findings as to RFC. The ALJ is required to account only for limitations that are supported by the medical evidence and accepted by him as credible. ***Outlaw v. Astrue,* 412 Fed. App. 894, 898 (7th Cir. 2011), citing *Simila v. Astrue*, 573 F.3d 503, 520-521 (7th Cir. 2009).**

Plaintiff also argues in his first point that the ALJ erred in not limiting him regarding bending and stooping. As evidence of his limitations in these areas, plaintiff relies on Dr. Feinerman's consultative examination report. The range of motion measurements found by Dr. Feinerman are at Tr. 545. Lumbar flexion is bending forward at the waist. See, http://www.merriam-webster.com/dictionary/flexion?show=0&t=1328285351, accessed on February 3, 2012. The normal range of motion of lumbar flexion is 90 degrees. Dr. Feinerman measured plaintiff's lumbar flexion at 60 degrees. This measurement, in and of itself, does not indicate that plaintiff cannot bend or stoop. In his narrative report, Dr. Feinerman did not note any inability to stoop or bend. Rather, he said that plaintiff was able to squat without difficulty,

stand and walk normally, and lift, carry and handle objects without difficulty. (Tr. 542-543).

Further, while Dr. Pardo acknowledged that plaintiff had some limitation of lumbar range of motion, he did not assign any limitations in his ability to stoop. See, Tr. 675-677. Dr. Pardo was acting as a state agency medical consultant. "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." **SSR 96-6p, at 2.** Plaintiff has not demonstrated that the ALJ erred in accepting Dr. Pardo's opinion as to his RFC.

For his second point, plaintiff argues that the ALJ misinterpreted the evidence. First, the ALJ wrongly concluded that plaintiff's back and neck pain were about the same before and after the alleged date of disability. The ALJ said that the record indicates that plaintiff's neck and back pain "were present at approximately the same level of severity prior to the alleged onset date." The ALJ went on to observe that the fact that plaintiff's pain did not prevent him from working in 2006 "strongly suggests that it would not currently prevent work." (Tr. 22).

Plaintiff points to various pieces of evidence which, according to him, establish that his pain was worse after the date of disability. Much of this evidence was discussed by the ALJ. For instance, as plaintiff acknowledges, the ALJ noted the fact that plaintiff reinjured his back in an incident involving a trailer. See, Tr. 22. Plaintiff fails to mention that the ALJ also accurately pointed out that plaintiff later told his treating doctor that the pain from the trailer incident had resolved with treatment. See, Tr. 22. The ALJ also noted the results of testing done in 2008, and the fact that plaintiff has used various modalities to relieve his pain.

The ALJ's decision must be given a "commonsensical reading." **Castile v. Astrue, 617 F.3d 923, 929 (7th Cir. 2010).** It is abundantly clear that the ALJ did not base his decision on his own "improper medical determination" that plaintiff's neck and back pain were the same as they had been in 2006, as plaintiff argues. Rather, the ALJ based his determination that plaintiff has

the ability to do some work at the light level on a thorough review of the evidence, including the opinions of the state agency consultant and Dr. Feinerman. It was for the ALJ to weigh and resolve conflicts in the medical evidence. Plaintiff has not even argued that it was error to accept the opinions of Drs. Pardo and Feinerman. Those opinions provide substantial evidentiary support for the ALJ's conclusion that Mr. Daugherty is not disabled.

Plaintiff suggests that the ALJ erred in failing to obtain the opinion of a medical expert as to the significance of the results of the 2006 CT scan and the 2008 MRI and nerve conduction studies. This argument misses the mark. Dr. Pardo reviewed the medical records and offered his opinions as to plaintiff's limitations, which the ALJ accepted. The ALJ did not, as plaintiff suggests, impermissibly draw his own conclusions as to the meaning of the test results.

Lastly, plaintiff argues that the ALJ wrongly concluded that plaintiff had complete relief of his pain with treatment. He is incorrect. The ALJ accepted the proposition that Mr. Daugherty has some pain; Mr. Daugherty's pain is the reason that he is limited to light work. After weighing the evidence, the ALJ concluded that plaintiff's pain was not as disabling as he claimed. Plaintiff has not demonstrated that the ALJ erred in reaching this conclusion. Significantly, plaintiff has not challenged the ALJ's credibility findings, except to argue that the ALJ misconstrued a doctor's note indicating that Plaintiff had an intentional gait. However, that observation was not made in the course of the ALJ's credibility analysis, and was a minor discrepancy, if it was a discrepancy at all.

## Recommendation

For the reasons discussed above, this Court recommends that the final decision of the Commissioner of Social Security finding that plaintiff David Gene Daugherty was not disabled, and therefore denying his application for DIB, be **AFFIRMED.**

Objections to this Report and Recommendation must be filed on or before **February 21, 2012.**

**Submitted: February 3, 2012.**

**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**
